Lionel **KIMBLE**, Appellant,

v.

**STATE of Alaska, Appellee.**

**No. 2287.**

Supreme Court of Alaska.

Aug. 22, 1975.

---

Millard F. Ingraham, Rice, Hoppner & Hedland, Fairbanks, for appellant.

Peter A. Michalski, Asst. Dist. Atty., Fairbanks, Avrum Gross, Atty. Gen., Juneau, Harry L. Davis, Dist. Atty., Fairbanks, for appellee.

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER, and BURKE, J.

## OPINION

RABINOWITZ, Chief Justice.

This is an appeal from a conviction for armed robbery. Kimble contends that the indictment by which he was charged should have been dismissed as duplicitous; that the victim's identification of him should have been suppressed as the product of tainted pretrial contacts; that an identification of his photograph should have been suppressed because counsel was not present at the photo display; that it was error for the trial judge to refuse to call additional veniremen when none of the venire was of the same race as Kimble; and that it was a denial of due process to allow the jury to deliberate almost twenty-four hours without access to rest facilities. We shall address each of these points in turn.

In February of 1974, Danny and Nancy Bernhardt attended a party at the Fairbanks Inn. As they were leaving they were approached just inside the door way by a man who asked for help in starting his car. Danny Bernhardt later identified the appellant, Lionel Kimble, as this man. Bernhardt indicated he had no jumper cables and so could not help. The Bernhardts then proceeded to their own car. As they began backing out, they heard a tapping on the driver's window. The same man who had spoken to them inside the Inn then demanded Bernhardt's money. Another man stood nearby with a rifle pointed at Bernhardt. After taking Bernhardt's wallet and his wife's purse and car keys, the robbers told Bernhardt to proceed with them toward the rear of the Inn. The man identified as Kimble said "shoot him, shoot him"; the other robber told Bernhardt to run. As Bernhardt ducked behind a nearby truck, the two robbers fled.

Kimble was arrested shortly after the robbery and was subsequently indicted. A jury found him guilty of armed robbery and this appeal followed.

Kimble's first specification of error is that the indictment by which he was charged was duplicitous.[1] The indictment refers to two separate statutory provisions, AS 11.15.240[2] (robbery) and AS 11.15.-295[3] (use of firearms during the commission of certain crimes). Kimble points out that Criminal Rule 8(a) provides for the charging of two or more offenses in the same indictment but in separate counts. He contends that the indictment was duplicitous in this respect, permitting, for instance, conviction of one offense (robbery) without proof of all elements of the other offense (armed robbery).

The rationale underlying the rule prohibiting duplicitous indictments is to give notice to the defendant of exactly what charges he must defend against and to avoid the consequences of the inability of the jury to indicate which way they are voting on each of the charges. These consequences include the possibility of a guilty verdict despite lack of unanimity of the jury on either charge alone; the possibility of prejudice to the defendant in sentencing; in obtaining appellate review; and in protecting himself against double jeopardy.[4]

We have previously dealt with the issue of duplicitousness in *Drahosh v. State*,[5] in which the separate crimes of failure to remain at the scene of an accident and failure to render aid were charged in a single count. There the jury was instructed in a manner which failed to distinguish between the two offenses, leaving the possibility that some jurors found Drahosh guilty on one charge and some on the other, with no unanimity on either one. We therefore reversed the conviction. Subsequently, in *Trounce v. State*,[6] we affirmed a conviction based on an indictment which charged in a single count assault with a dangerous weapon on two different persons. We noted that the rule against duplicitous indictments is essentially a pleading rule, and is not necessarily a fatal defect.[7] In *Trounce* this court was unable to find any significant basis for the possibility that the jury verdict lacked unanimity, as in *Drahosh*, because the jury was instructed that they must find that Trounce aided and abetted in the assaults upon both persons named in the single count.

As to the specific charges in the case at bar, we have previously considered the manner in which AS 11:15.240 and AS 11.-

---

1. The indictment read in part:
   That on or about the 17th day of February, 1974, at or near Fairbanks, in the Fourth Judicial District, State of Alaska, Lionel Kimble did willfully, . . . by force and violence and by putting Danny L. Bernhardt in fear with a rifle, take from the person of said Danny L. Bernhardt property of value, to-wit: a leather wallet containing Master Charge, Penney's, Wards, Standard Oil Company and Northern Commercial Company credit cards issued in the names of Danny L. Bernhardt and Nancy W. Bernhardt.
   All of which is contrary to and in violation of Alaska Statutes 11.15.240 and 11.15.295 and against the peace and dignity of the State of Alaska.

2. AS 11.15.240. Robbery. A person who, by force or violence, or by putting in fear, steals and takes anything of value from the person of another is guilty of robbery, and is punishable by imprisonment in the penitentiary for not more than 15 years nor less than one year.

3. AS 11.15.295. Use of firearms during the commission of certain crimes. A person who uses or carries a firearm during the commission of a robbery, assault, murder, rape, burglary, or kidnapping is guilty of a felony and upon conviction for a first offense is punishable by imprisonment for not less than 10 years. Upon conviction for a second or subsequent offense in violation of this section, the offender shall be imprisoned for not less than 25 years.

4. *See* C. Wright, 1 *Federal Practice and Procedure* §§ 141–43; 8 *Moore's Federal Practice* ¶ 8.03–.04.

5. 442 P.2d 44 (Alaska 1968). *See also Nickerson v. State*, 492 P.2d 118, 121 (Alaska 1971).

6. 498 P.2d 106 (Alaska 1972).

7. *See Christian v. State*, 513 P.2d 664 (Alaska 1973); Alaska R.Crim.P. 7(e).

15.295 operate in relation to each other. In *Whitton v. State*[8] the defendant was found guilty of robbery and of using a firearm during commission of that robbery. On appeal Whitton claimed the two charges were really for one offense, armed robbery, and so to be sentenced for both amounted to double jeopardy. We held that for purposes of double jeopardy, the crimes of robbery and use of a firearm during robbery were the same offense, and therefore we reversed.[9]

Here, however, the two charges were considered as one throughout Kimble's trial. The Superior Court's instructions to the jury repeatedly characterize the trial as one for the single offense of robbery by use of firearms.[10] At no point in the record is there any indication that the jury was informed that it could find Kimble guilty of robbery, as opposed to robbery by use of firearms. It is improbable that the jury thought it was empowered to convict for a violation of AS 11.15.240 alone. Under the court's instructions, if they failed to find that the prosecution had proven beyond a reasonable doubt the element of use of a firearm, or any other elements of the crime of armed robbery, they would have had to return a verdict of not guilty. Since the trial court's instructions presented the case to the jury as one involving solely an armed robbery prosecution, there was no possibility of a non-unanimous jury, with some members finding guilt of robbery and others guilt of use of firearms during the robbery. Thus if there was any error in the framing of the indictment, it was harmless.[11]

Kimble next asserts that certain pretrial contacts between himself and the victim, Danny Bernhardt, were sufficiently suggestive to taint Bernhardt's later in-court identification.

The robbery occurred on February 17, 1974. On February 22, Bernhardt came to the State Troopers' office in the Fairbanks courthouse to pick up a subpoena. While Bernhardt was in the office chatting with a trooper about matters unconnected with the robbery, Kimble and another prisoner were led into the room and put in a holding cell.[12] According to the trooper, "Mr. Bernhardt got kind of a funny expression on his face, and he said that—meaning Mr. Kimble—was the one that perpetrated the armed robbery". Neither Bernhardt nor the trooper knew Kimble's name at the time or that he was there for a purpose related to the robbery of Bernhardt. Bernhardt himself testified that he saw Kimble entering the elevator near the troopers' office in the courthouse and at the time recognized him as the robber. Kimble was

---

8. 479 P.2d 302 (Alaska 1970).

9. *See also Robinson v. State*, 484 P.2d 686 (Alaska 1971). We have also voided separate sentences for shooting with intent to kill (AS 11.15.150) and use of a firearm during commission of the assault (AS 11.15.-295), *McCracken v. State*, 521 P.2d 499 (Alaska 1974), on the same double jeopardy grounds.

10. Instruction No. 2 states " . . . the state has the burden of proving beyond a reasonable doubt every material allegation contained in the indictment, as well as the essential elements of the crime of robbery by use of firearms".

Instruction No. 3 lists the "essential elements of the crime of robbery by use of firearms"; the final element listed is "that a firearm was used in the commission of the crime".

In Instruction No. 23 the jury was told:
If you should find the defendant guilty of robbery by use of firearms as charged in the Indictment your foreman will write the word "guilty" in the space provided on the verdict form. If your verdict is that the defendant is not guilty of the crime of robbery by use of firearms as charged in the Indictment, your verdict shall be "not guilty" and your foreman will enter the same on the verdict form.

Finally, the verdict form returned by the jury pronounced the defendant "guilty of the crime of robbery by use of firearms as charged by the Indictment in this case".

11. We note that Kimble couched the objection to the indictment in terms of a motion to dismiss. Even if the indictment here had been duplicitous, the proper remedy would not have been to dismiss it, but to compel the state to elect the charges on which it wished to proceed. *Trounce v. State*, 498 P.2d 106, 111 (Alaska 1972).

12. Kimble was being brought to the courthouse from the jail in connection with his arraignment later that day.

not wearing prison clothes or handcuffs at the time, but Bernhardt did believe him to be in custody.

Later that same day Bernhardt again observed Kimble. Bernhardt was subpoenaed to testify at the preliminary hearing of another defendant charged in connection with the robbery. While sitting in the courtroom waiting to testify, Bernhardt observed Kimble for 15 to 30 minutes sitting in an area reserved for persons waiting to be arraigned. Later in the hall Bernhardt asked a trooper the name of that person and was told his name was Kimble.

The effect of suggestive pretrial contacts on in-court identification is the subject of a number of United States Supreme Court and Alaska Supreme Court opinions.[13] In *United States v. Wade*[14] and its progeny the concern was mainly with the effect of lack of counsel at critical stages of prosecution at which identifications were made. In *Stovall v. Denno*,[15] the Court considered whether, in the totality of the circumstances, a pretrial confrontation with a defendant might be so suggestive and conducive to irreparable mistaken identification as to deny the defendant due process of law.

■ We have employed the *Wade-Stovall* type of analysis and attempted to determine whether, in each case, there is sufficient evidence of an independent origin for the in-court identification that any suggestive pretrial contacts could not substantially lessen the dependability of the in-court identification. In examining the facts in this case, however, we note at the outset that it differs from the cases cited *supra* in that those cases involved confrontation arranged by the police or prosecuting authority for the purpose of affording opportunity for a pretrial identification of the defendant. In this case, on the other hand, the confrontations were accidental in the sense that the State at no time appears to have intended Bernhardt to view Kimble for the purpose of making an identification. Nor do we believe that the State deliberately attempted to influence Bernhardt's memory of the robbery by exposing Kimble to him. To extend the *Wade-Stovall* line of cases to purely accidental pretrial confrontations would place too great a burden on police and prosecutors to isolate witnesses and defendants.[16] We hold, therefore, that when a pretrial confrontation is purely accidental and is not prearranged by the State, we will not ordinarily inquire into whether a denial of due process is the result. An accidental pretrial confrontation may be the subject of cross-examination of course, but on the whole the question is one going to the weight rather than the admissibility of the evidence.

■ However, even if we were to reach the question of a due process violation, we would be highly unlikely to find a violation of due process in this case.[17] Bernhardt

13. *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *McCracken v. State*, 521 P.2d 499 (Alaska 1974); *Davis v. State*, 499 P.2d 1025 (Alaska 1972), rev'd on other grounds, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). *See also* Annot., 39 A.L.R.3d 487; Annot., 39 A.L.R.3d 791 (1971); Grano, "Kirby, Biggers and Ash: Do Any Constitutional Safeguards Remain Against the Danger of Convicting the Innocent?", 72 Mich.L.Rev. 717 (1974).

14. 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

15. 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

16. We would, however, admonish the State to greater diligence in guarding against inadvertent confrontations such as occurred in the preliminary hearing mentioned above.

17. In *Davis v. State*, 499 P.2d 1025 (Alaska 1972), we cited the *Wade* list of factors to be considered in determining whether an independent origin for an in-court identification exists:

Application of this test in the present context requires consideration of various factors; for example, the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's

first saw Kimble inside the Fairbanks Inn, where he spoke with Kimble and was able to observe his full face. During the robbery the robber wore a hood which covered his ears but left most of his face in view. Although he could not clearly make out the facial features of the robber outside, Bernhardt testified that mainly he pictured the robber as he viewed him inside the Inn. The confrontations at the courthouse took place only five days after the robbery. When Bernhardt first sighted Kimble on that day he had no reason to connect him with the robbery; nonetheless his identification was spontaneous and unprompted. In addition, Bernhardt gave the police a description of the robber which generally fit the appellant.[18]

Thus, the evidence indicates that Bernhardt's identification had an independent origin in his observations during the robbery; the likelihood that the pretrial confrontations formed the basis of the courtroom identification is small enough to be discounted.

Kimble's third specification of error relates to a photographic identification by a witness. The day after the robbery a man bought a ring from a Fairbanks jewelry store using Danny Bernhardt's stolen credit card. Karen McCarten, a store clerk who knew the real Danny Bernhardt slightly, reported her suspicions to the police. The same day the police caught a man (not Kimble) using Bernhardt's credit card in another store.

A few weeks after the robbery McCarten was shown a photographic lineup by a police detective and picked Kimble out as the person who had purchased the ring with Bernhardt's credit card. At trial she testified that Kimble had purchased the ring, and the detective testified as to her earlier identification of the photograph.

Kimble moved before trial to suppress evidence of McCarten's photographic identification because counsel was not present during the photo display. The motion was denied, and Kimble now asserts this as error.

Kimble admits that the controlling law on photographic displays is contained in *United States v. Ash*,[19] which does not support his position. He urges that this court apply a stricter standard under the Alaska Constitution.

In *Ash*, a bank was robbed in 1965 by two men in stocking masks. In 1966 four bank workers made uncertain identifications of Ash's picture when it was shown to them in a group of five. Thereafter Ash was arrested and indicted. In 1968, just before trial, the prosecutor showed five new photos to the four witnesses; three picked out Ash, but one was unable to make a selection. The Supreme Court decided that this latter photo lineup, conducted without defense counsel present, was proper. The Court reviewed the *Wade* decision and decided that here a determination of the inaccuracies of the photo display technique did not end the examination, but led to the second question, "whether confrontation with counsel at trial can serve as a substitute for counsel at the pretrial confrontation" (413 U.S. at 316, 93 S.Ct. at 2577). It concluded that to extend the right to counsel to pretrial photographic displays would be a significant departure from the historical test; it could lead, for instance, to requiring coun-

---

actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup.
388 U.S. at 241, 87 S.Ct. at 1940, 18 L.Ed.2d at 1165 (footnote omitted).

*Cf.* the similar list of factors set forth in *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

18. The sole inaccuracy was that he gave an estimate of the robber's weight higher than appellant's actual weight.

19. 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973). *See also Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed. 2d 1247 (1968).

sel at the prosecutor's trial-preparation interviews with witnesses.

■ Appellant contends that the reasoning of *Ash* conflicts with the *Wade* decision's emphasis on the ability of counsel to observe the identification procedure and so to reconstruct it at trial. We are not convinced that there exists good reason to impose a requirement of counsel at photographic displays, and we decline to so rule. Since there is no right to counsel at photographic displays, Kimble's motion to suppress was properly denied. However, we think it a reasonable requirement that in the future all photo displays which are used in photographic lineups be preserved and made part of the record.

Kimble also contends that it was error for the Superior Court to refuse to call additional veniremen after his counsel pointed out that there were no black members of the venire of jurors. Kimble, who is black, asserts that he was thereby denied his right to trial by a jury of his peers.

At the outset we note that the motion to call additional veniremen came halfway through the jury impaneling. The trial judge indicated he considered the motion untimely. We need not decide the timeliness question since we find Kimble's contention to be without substantive merit.

■ This court has held that purposeful and systematic exclusion of an identifiable portion of the community must be shown to invalidate a jury in a criminal case.[20] In *Malvo v. J. C. Penney, Co., Inc.,*[21] the plaintiffs, who were black, contended that the absence of blacks from the two juries which tried the civil false arrest-imprisonment suits established a prima facie case of discrimination. In *Malvo* we cited *Swain v. Alabama,*[22] where the Supreme Court of the United States said:

[A] defendant in a criminal case is not constitutionally entitled to demand a proportionate number of his race on the jury which trie[d] him nor on the venire [nor] jury roll from which petit jurors are drawn. . . .

Thus in *Malvo,* we concluded, it must be shown that the jury selection method purposefully and systematically excludes an identifiable portion of the community, and it is not sufficient to show simply that the particular jury in question does not include a representative from all segments of the local population.

■ In the instant case Kimble has conceded that there was no impropriety in the selection of the venire. He basically contends that he has a right to have members of his own race on the jury. Since *Malvo* negatives this assertion, and since he did not attempt to prove intentional or systematic exclusion of blacks, we find no merit to his complaint concerning the venire.

Kimble's final contention is that he was denied due process because the jury was allowed to deliberate for either 21 or 22 hours without access to adequate rest facilities. The record indicates that the jury commenced its deliberations about 11:40 a. m. on June 4th. Court was next reconvened to receive the verdict at 9:40 a. m. on June 5th. The record does not reveal exactly when the verdict was reached, although the jury foreman dated the verdict form as June 5. Because no hotel space was available at the time in Fairbanks, none was provided for the jurors. It appears that the jurors made some attempt to sleep in the courtroom.

In *West v. State,*[23] we were confronted with the factual situation of a jury returning its verdict after 14 hours and 20 min-

**20.** *Malvo v. J. C. Penney Co., Inc.,* 512 P.2d 575 (Alaska 1973); *Alvarado v. State,* 486 P.2d 891 (Alaska 1971). *See also Avery v. State,* 514 P.2d 637 (Alaska 1973); *Bachner v. Pearson,* 479 P.2d 319 (Alaska 1970); *Green v. State,* 462 P.2d 994 (Alaska 1969); *West v. State,* 409 P.2d 847 (Alaska 1966); *Crawford v. State,* 408 P.2d 1002 (Alaska 1965).

**21.** 512 P.2d 575 (Alaska 1973).

**22.** 380 U.S. 202, 208, 85 S.Ct. 824, 829, 13 L.Ed.2d 759, 766 (1965).

**23.** 409 P.2d 847 (Alaska 1966).

utes. of actual deliberations. We noted that the jury never complained of fatigue and declined to reverse the conviction on the basis of the elapsed time of deliberations alone.

█ A number of cases from other jurisdictions indicate the general rule that some evidence of fatigue or coercion beyond that inferrable from length of deliberations alone must be shown to gain reversal.[24] In the instant case, not only did the jury not complain of fatigue, the members were not continuously deliberating during the period at issue, but some at least attempted to sleep in the courtroom. In view of the total lack of evidence that fatigue or coercion was a factor in the verdict, we uphold the trial court's exercise of discretion in allowing the jury to deliberate throughout the period in question.

Affirmed.

---

24. *See e. g., Commonwealth v. Moore,* 398 Pa. 198, 157 A.2d 65 (1959) ; *Commonwealth v. Clark,* 404 Pa. 143, 170 A.2d 847 (1961) ; *People v. Presley,* 22 A.D.2d 151, 254 N.Y.S. 2d 400 (App.Div.1964), aff'd 16 N.Y.2d 738, 262 N.Y.S.2d 113, 209 N.E.2d 729 (1965) ; *DeGrandis v. Fay,* 335 F.2d 173 (2nd Cir. 1964). *See also* A.B.A. Standards, Trial by Jury § 5.4(b) and Comments, pp. 147–50; Annot., 93 A.L.R.2d 627 (1964).