**STATE of Alaska, Appellant,**

v.

**Daniel HANNAGAN, Appellee.**

No. 2667.

Supreme Court of Alaska.

Feb. 9, 1977.

As Modified on Grant of Rehearing
March 11, 1977.

Ivan Lawner, Asst. Dist. Atty., and Joseph D. Balfe, Dist. Atty., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellant.

Brian C. Shortell, Public Defender, Anchorage, for appellee.

## OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, ERWIN and BURKE, JJ.

BOOCHEVER, Chief Justice.

The State of Alaska appeals from the decision of the trial court rendered on a Criminal Rule 35(b) post-conviction relief proceeding. This appeal raises the initial procedural question of the state's right to appeal from post-conviction relief proceedings, as well as the substantive issue of the defendant's right to be present during the playback of trial testimony to the jury. We hold that the state may appeal a Criminal Rule 35(b) post-conviction relief determination. We further hold that the request for and the playback of testimony are stages of trial; that the defendant's absence consti-

tuted error; that the defendant's attorney may not waive this right for the defendant; but that the error within the context of this case was harmless beyond a reasonable doubt.

## I. FACTS

The defendant, Daniel Hannagan, was indicted on a charge of larceny in a building[1] for stealing a caribou-legged lamp from the office of a Glennallen filling station on or about July 5, 1974. At trial, Mr. Hannagan did not deny taking the lamp after he stopped at the station to buy gas, but attempted to defend against the larceny charge by showing that he lacked the necessary specific intent to commit the offense. Mr. Hannagan contended that he was given permission to take the lamp by William McCormick, a person who was present at the service station and who allegedly told Hannagan that he was an employee.

McCormick testified that he was a customer at the gas station, that he had seen Hannagan with a woman and a boy in the office of the station, but that the woman and the boy had left the office before McCormick entered. The woman and the boy—Hannagan's wife and a young relative—apparently testified at trial that they had heard McCormick give Hannagan permission to take the lamp. This would have been possible only if they had been in the office at the same time as Hannagan. McCormick testified that after entering the office, he was questioned by Hannagan and answered that he was waiting for his car and was not an employee of the station. He denied having said or done anything to indicate to Hannagan that he could take the lamp.

Testimony from Stephyn Strunk, the 14-year-old gas station attendant, placed McCormick inside the office of the service station at the time Hannagan entered and left the office. This could raise an inference that McCormick was in the office when the woman and boy were there. Strunk also testified that McCormick was standing near the cash register, a likely

1. AS 11.20.150.

place for a station employee to stand. McCormick stated at trial that he stood behind the soft drink machine in the office, although other portions of his testimony might suggest that he was behind the cash register.

If the jury had believed Strunk's testimony as to McCormick's presence and position in the office, they might have given weight to Hannagan's defense of a permissive taking of the lamp. In his final argument, counsel for Hannagan emphasized that Strunk's testimony contradicted McCormick's on the issues of whether McCormick was inside the office the entire time that Hannagan was in the office and whether McCormick was standing near the cash register.

Before final argument, both counsel and the defendant agreed on a sealed verdict procedure. Following closing argument, Mr. Hannagan returned to his home in Wasilla, a one-hour drive from Anchorage. His attorney told him that he would not need to be in court until the next morning and that if any problems arose, he would be notified by telephone.

The jury interrupted its deliberation at 9:25 p. m. to request a replay of the testimony of Strunk and McCormick. Both counsel were called and arrived at the courthouse. Hannagan was not called, although is attorney knew how to contact him by telephoning his next-door neighbor. The trial judge suggested delaying the proceedings until the next morning when Hannagan could be present. Hannagan's attorney attempted to waive his client's right to be present at the playback in these words:

> MR. FOX: Your Honor, for the purposes of the record, I don't think it will be necessary. I think this matter is something that doesn't require the presence of the defendant, and I would waive any problems in that respect and would agree to the jury hearing that particular tape.

The prosecutor and the court then agreed to proceed without the defendant.

Strunk's testimony was played back until, after approximately 45 minutes of direct and cross-examination, the jurors indicated that they had heard enough. The remainder of Strunk's testimony and all of McCormick's testimony was not played. The jury then retired and published a verdict of guilty the next morning.

Following the verdict, Hannagan brought a proceeding for post-conviction relief, pursuant to Criminal Rule 35(b). Hannagan testified that he had been available at home on the night of the jury's deliberation and would have wanted to be present at the playback. He stated that he did not know that a playback might take place and had not given consent to his counsel to waive his presence. Hannagan testified that he was not informed of the playback the next morning, and his attorney did not recall ever talking to Hannagan about the jury listening to tapes of the testimony.

In an affidavit submitted at the post-conviction hearing, Hannagan's trial attorney stated that he felt the jury's request could very well have been favorable to the defendant since it focused on the conflicting testimony of two state witnesses which supported defendant's theory of the case. Hannagan's attorney felt that the sooner the jury heard the tape replay, the better it would be for his client, and, further, that Hannagan's presence during the replay offered no particular advantage.

The court at the post-conviction relief hearing concluded that Hannagan's attorney did not make the waiver of Hannagan's presence as a strategic decision occurring during the heat of the trial. It found that the waiver by Hannagan's attorney was ineffective and that Hannagan's involuntary absence at the playback violated defendant's rights under Criminal Rule 38. Consequently, the conviction was vacated by the trial court, even though it found the state's case against Hannagan "overwhelming." From this reversal, the state appeals.

## II. THE STATE'S RIGHT TO APPEAL

Hannagan obtained reversal of his conviction via post-conviction relief under

Criminal Rule 35(b).[2] The initial question before the court is whether the state may appeal from an adverse decision of the trial court under Criminal Rule 35(b).[3]

Hannagan argues that a proceeding under Criminal Rule 35(b) should be considered a proceeding in the original criminal case. The state's right of appeal in criminal cases is limited to testing the sufficiency of indictments or informations and to sentence appeals.[4] The state claims that a Rule 35(b) proceeding is a separate *civil* proceeding in the nature of a habeas corpus action or a proceeding under 28 U.S.C. § 2255, the federal post-conviction relief statute.

We decline to adopt Hannagan's argument that a Criminal Rule 35(b) proceeding is part of the original criminal case and therefore hold that the state may appeal. Various reasons mandate this conclusion.

First, we look to the wording of Criminal Rule 35 itself. Section (j) states:

(j) *Review.*

A final judgment entered under this rule may be reviewed by the supreme court on appeal brought either by the applicant *or the state* within 40 days from the entry of judgment. (emphasis added)

This language indicates that the state's right of appeal is broader than the more limited rights of the state to appeal from the criminal trial itself.

This construction is bolstered by other provisions of Criminal Rule 35. Criminal Rule 35(c) [5] states that the post-conviction remedies set out in the rule do not affect and are not a substitute for remedies of direct review of the sentence or conviction. Criminal Rule 35(h) [6] provides that all rules and statutes applicable in civil proceedings are available to the parties. Rule 35(h) also states that an order made by the court in a post-conviction relief proceeding is a final judgment.

██ These sections indicate that a Rule 35(b) proceeding is separate from the original criminal proceeding, is governed by civil procedure, results in a final judgment and may be timely appealed by the state as well as the applicant.

---

2. Criminal Rule 35(b) states, in part:
   (b) *Post Conviction Procedure—Scope.* Any person who has been convicted of, or sentenced for, a crime and who claims:
   (1) *that the conviction or the sentence was* in violation of the constitution of the United States or the constitution or laws of Alaska;
   . . . . .
   may institute a proceeding under this rule to secure relief.

3. While we have already denied defendant's earlier motion to strike the appeal on these grounds, we did so without a full written opinion. We will now proceed to discuss and clarify our denial of defendant's arguments.

4. AS 22.05.010(a) provides in part:
   An appeal to the supreme court is a matter of right, except that the state shall have no right of appeal in criminal cases, except to test the sufficiency of the indictment or information and under (b) of this section.
   AS 22.05.010(b) states:
   The supreme court has jurisdiction to hear appeals of sentences of imprisonment lawfully imposed by the superior courts on the grounds that the sentence is excessive or too lenient . . . . .

5. Criminal Rule 35(c) provides:
   This remedy is not a substitute for nor does it affect any remedy incident to the proceed-

ings in the trial court, or of direct review of the sentence or conviction. It is intended to provide a standard procedure for accomplishing the objectives of all of the constitutional, statutory or common law writs.

6. Criminal Rule 35(h) states:
   The application shall be heard in, and before any judge of, the court in which the conviction took place. An electronic recording of the proceeding shall be made. *All rules and statutes applicable in civil proceedings, including pre-trial and discovery procedures are available to the parties.* The court may receive proof by affidavits, depositions, oral testimony, or other evidence. The court may order the applicant brought before it for the hearing. If the court finds in favor of the applicant, it shall enter an appropriate order with respect to the conviction or sentence in the former proceedings, and any supplementary orders as to rearraignment, retrial, custody, bail, discharge, correction of sentence, or other matters that may be necessary and proper. The court shall make specific findings of fact, and state expressly its conclusions of law, relating to each issue presented. *The order made by the court is a final judgment.* (emphasis added)

■ Additional support for our conclusion is found in the case law addressing the function of Criminal Rule 35 and its federal analogs. In *Merrill v. State*, 457 P.2d 231 (Alaska 1969), this court suggested that a Criminal Rule 35 proceeding was similar in nature to a habeas corpus proceeding.[7] A habeas corpus proceeding is an independent civil proceeding.[8] In *Donnelly v. State*, 516 P.2d 396, 398 (Alaska 1973), we stated that Criminal Rule 35, like the federal statutory post-conviction relief remedy, 28 U.S.C. § 2255, was designed to supplant the more cumbersome traditional habeas corpus remedy.[9] A proceeding under 28 U.S.C. § 2255 is similar to an independent civil proceeding, and the government has the right to appeal an adverse determination.[10]

We therefore hold that a post-conviction relief proceeding instituted by the defendant under Criminal Rule 35(b) is similar to an independent civil proceeding such as a habeas corpus proceeding for purposes of the state's ability to appeal, and that consequently the state has the right to appeal in this case.[11]

### III. DEFENDANT'S PRESENCE DURING PLAYBACK

Hannagan claims the response to the jury request for an electronic playback of testimony and to the playback itself are stages of the trial and that the defendant's presence is therefore required.

The right of an accused to be present at stages of trial has long been recognized in this country. The United States Supreme Court in 1892 stated:

A leading principle that pervades the entire law of criminal procedure is that, after indictment found, nothing shall be done in the absence of the prisoner.

*Lewis v. United States*, 146 U.S. 370, 372, 13 S.Ct. 136, 137, 36 L.Ed. 1011, 1012 (1892).

The United States Supreme Court has treated an accused's right to be present in the courtroom at every stage of the trial as a right of constitutional dimension, related either to the confrontation clause of the sixth amendment or to the fourteenth amendment's due process clause.[12] In Alaska, the right to be present is also founded in the state constitutional rights of the accused to due process[13] and to confront the witnesses against him.[14]

This court has recognized the common law origins of the right to be present at trial and the constitutional dimension of this right.[15] The constitutional right has been implemented as a procedural requirement by Criminal Rule 38 which states:

(a) *Presence Required.* The defendant shall be present at the arraignment, at the preliminary hearing, at the time of plea, at the omnibus hearing, and at every stage of the trial, including the im-

**7.** To secure relief in a habeas corpus proceeding, now largely superseded by motions under Criminal Rule 35, . . . .
457 P.2d at 234.

. . . [T]he Amended Petition for Habeas Corpus will be treated by this court as a successive application for post-conviction relief pursuant to Criminal Rule 35(b).
457 P.2d at 235.

**8.** AS 12.75.010 provides in part that in habeas corpus proceedings, "[p]rocedure may be as prescribed in the Rules of Civil Procedure." Civil Rule 86 states: "The procedure in an action for habeas corpus shall be governed by the rules governing the procedure in civil actions."

**9.** Criminal Rule 35 was amended in 1968 to make the rule more flexible than the federal statute. *Donnelly v. State, supra,* at 398, n. 4. The Alaska rule is still similar in nature to 28 U.S.C. § 2255.

**10.** *See* 2 C. Wright, Federal Practice and Procedure: Criminal § 583 at 564; § 590 at 580; and § 601 at 639 (1969).

**11.** Our holding is limited to the determination of the state's right to appeal. The issue of whether a Criminal Rule 35(b) motion is "civil in nature" for purposes of other criminal procedural or substantive safeguards is not now before the court and considered in this decision.

**12.** *See, e. g., Illinois v. Allen,* 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353, 356 (1970); *Dowdell v. United States,* 221 U.S. 325, 331, 31 S.Ct. 590, 592, 55 L.Ed. 753, 757 (1911); *Lewis v. United States,* 146 U.S. 370, 373, 13 S.Ct. 136, 137, 36 L.Ed. 1011, 1013 (1892); *Hopt v. Utah,* 110 U.S. 574, 578, 4 S.Ct. 202, 204, 28 L.Ed. 262, 264–65 (1884). *Cf. Snyder v. Massachusetts,* 291 U.S. 97, 107–08, 54 S.Ct. 330, 332, 333, 78 L.Ed. 674, 679 (1934).

**13.** Alaska Constitution, article I, sec. 7.

**14.** Alaska Constitution, article I, sec. 11.

**15.** In *Lee v. State,* 509 P.2d 1088, 1089–90 (Alaska 1973), we noted:

paneling of the jury and return of the verdict, and at the imposition of sentence, except as otherwise provided in this rule.

In *Gafford v. State*, 440 P.2d 405, 417 (Alaska 1968), and *Noffke v. State*, 422 P.2d 102, 105 (Alaska 1967), we held that a defendant has a right to be present when any type of communication occurs between the court and the jury during its deliberations. In the instant case, the jury foreman sent a note to the judge requesting a replay of certain testimony. This request was granted, and the playback made in defendant's absence.

█ Since response to a request by the jury during their deliberations and the playback itself occurred during a stage of the trial, Hannagan's presence was required by Criminal Rule 38(a). The state concedes that normally the rule does mandate a defendant's presence at a playback.

The state argues, however, that in this case defendant, through his counsel, waived his right to be present. It points to the fact that Hannagan's attorney explicitly waived defendant's presence, and, in addition, did so for a deliberate tactical advantage while in the midst of litigation. In the post-conviction relief proceeding, the superior court found that the waiver was not for a tactical advantage.

In view of defense counsel's statements, we disagree with the trial court's holding that the waiver was not prompted by trial tactics. Even so, we find the state's argument concerning waiver to be unpersuasive.

The right of a defendant to be present at all stages of the proceedings existed at common law. The sixth amendment to the United States Constitution and article 1, section 11, of the Constitution of the State of Alaska confers on the accused the right 'to be confronted with the witnesses against him.' This constitutional right has been implemented by Alaska Criminal Rule 38 (essentially similar to Federal Rule of Criminal Procedure 43) . . . . (footnote omitted)
*See also Koehler v. State*, 519 P.2d 442 (Alaska 1974); *R.L.R. v. State*, 487 P.2d 27 (Alaska 1971); *Speidel v. State*, 460 P.2d 77 (Alaska 1969); *Noffke v. State*, 422 P.2d 102 (Alaska 1967); *Brown v. State*, 372 P.2d 785 (Alaska 1962).

16. For a fuller discussion of the law in the area of waiver, *see Lanier v. State, supra* at 986, where we noted that:

In *Lee v. State*, 509 P.2d 1088, 1092 (Alaska 1973), this court recognized that an attorney may waive his client's right to be present in a non-capital case. The court stated, however:

> . . . [T]he waiver is effective only if either: (1) the defendant has given counsel express authority in a knowing and intelligent manner, (2) the defendant is present at the time of the waiver, has clearly been informed of his rights, and remains silent, or (3) the defendant subsequently acquiesces in the proceedings in a knowing and intelligent manner.

These conditions were not met in this case. In *Lanier v. State*, 486 P.2d 981, 988 (Alaska 1971), we recognized that a client's rights may be waived by his counsel without his consent under circumstances where the decision was clearly a part of trial strategy which occurred during the trial and where no "exceptional circumstances" existed.[16]

█ In the *Lanier* case, however, there existed no constitutional mandate that the right be personally exercised by the client or with his express consent.[17] Unlike *Lanier, supra*, we are here faced with a situation where the defendant's express consent is constitutionally mandated. Under our decision in *Lee v. State, supra*, there is a constitutional requirement that the defendant personally waive his right to be present at trial in a knowing and intelligent manner. Absent the defendant's express waiver, an attorney may not waive this right for his client. Where a constitutional mandate of

As a minimum proposition, the federal constitution requires that in "exceptional circumstances" a client is not bound by a waiver of his rights by his attorney without his consent, but he will be bound if there are no exceptional circumstances.

17. In *Lanier v. State, supra* at 986, we stated that "Furthermore there is no constitutional command that constitutional rights be exercised by those who hold them." That is to say that there is no requirement that "*all*" constitutional rights be exercised by those who hold them. Nevertheless, *Lanier* makes it clear that waiver of certain constitutional rights must be exercised personally. *Lanier, supra* at 986–87. The situation in *Lanier, supra*, involving cross-examination is one situation where the constitutional right need not be exercised personally by the defendant, and that case does not, there-

personal waiver exists, the case is distinguishable from the *Lanier* case, or otherwise stated, where our constitution requires that the defendant personally waive his rights, the "exceptional circumstances" we referred to in *Lanier* exist, and an attorney may not waive the right for his client. The *Lee* case distinguishes *Lanier*, *supra*, from a situation such a Hannagan's and is controlling on the issue of waiver. Under these circumstances, the waiver must comply with the criteria established in *Lee v. State*, *supra*.

In light of the constitutional mandate of defendant's personal waiver, we hold that the waiver of defendant's presence during the playback of testimony was ineffective. Since the defendant did not effectively waive his presence, we hold that it was constitutional error for the judge to communicate with the jury or permit the playback of testimony to the jury in defendant's absence.

■ Having found constitutional error to be present, we must decide if this error is harmless. In *Noffke v. State*, 422 P.2d 102, 105 (Alaska 1967), the court established the harmless error rule for violations of Criminal Rule 38:

fore, control a situation where the constitution does mandate personal waiver.

**18.** *Chapman v. California*, 386 U.S. 18, 23–24, 87 S.Ct. 824, 827–828, 17 L.Ed.2d 705, 710–11 (1967).

**19.** *Gafford v. State*, 440 P.2d 405 (Alaska 1968); *Egelak v. State*, 438 P.2d 712 (Alaska 1968); *Kugzruk v. State*, 436 P.2d 962 (Alaska 1968).
In *Gafford v. State*, *supra*, the judge received a communication from the jury foreman requesting that the courtroom be cleared for a reading of the verdict because of prior emotional outbursts from the defendant. The judge responded in writing that it was not possible to clear the courtroom, that the defendant must be present at the reading of the verdict and that he would see that a state police officer was present. Neither the defendant nor his attorney had any knowledge of this communication between the judge and the jury. This court held that the error was harmless since the communication had no direct bearing on the merits of the case and did not affect any substantial right of the defendant.

We hold that nonadherence by the trial court to the provisions of Crim.R. 38 does not automatically constitute reversible error. A violation of a mandate of Crim.R. 38 is not prejudicial error unless such nonadherence has affected a substantial right of the defendant. (footnotes omitted)

The same year, the United States Supreme Court adopted the requirement that a constitutional error is reversible unless "harmless beyond a reasonable doubt." [18] In *Evans v. State*, 550 P.2d 830, 840 (Alaska 1976), we followed the *Chapman* standard. Therefore, the *Noffke* requirement that the error not affect a substantial right of the defendant has now been supplanted by the "harmless beyond a reasonable doubt" test.

■ Thus, we must determine whether, based on the evidence presented, the state and federal constitutional error was harmless beyond a reasonable doubt. This court has viewed various cases where violations of Criminal Rule 38 did not affect "a substantial right" under the old test established in *Noffke* or did not constitute error which was "harmless beyond a reasonable doubt" under the new test established in *Chapman*.[19] We have also viewed cases where violations of Criminal Rule 38 mandated reversal.[20]

In *Egelak v. State*, *supra*, the district attorney showed photographs of the victim to the judge just before the sentencing hearing. The defense attorney entered chambers while this was occurring, but the defendant was not present. The defense attorney did not object at the sentencing hearing to the judge's *ex parte* viewing of the photographs. This court disapproved of *ex parte* proceedings, but held that the error was harmless particularly considering the defense attorney's failure to object during sentencing hearing.
In *Kugzruk v. State*, *supra*, the defendant was absent from four anteroom conferences during the course of the trial at which both attorneys and the judge were present. We suggested that defendants should be present at such conferences, but held that Kugzruk's exclusion in this case was harmless error because no substantial rights were affected. One of the four conferences, for example, involved only a grammatical change in a jury instruction suggested by the district attorney and addition of an omitted word suggested by defense counsel.

**20.** This court has found reversible error in situations where the defendant's presence could

Under the facts of this case, we hold that the violation of Criminal Rule 38 was harmless beyond a reasonable doubt. We begin by noting that on the record before us it is impossible to determine whether or not the trial court kept an independent record of the playback proceedings by recording the proceedings on a separate tape recorder. Hannagan does not argue in his brief on appeal that there was no independent record made and does not claim that a failure to do so in itself constitutes error. From the record before us, it appears that the only communications during playback were the discussion of Mr. Hannagan's absence and a question by the court regarding the testimony the jury wanted to hear.[21] Hannagan does not claim that any improper conduct occurred during the playback proceedings or that it was error for the trial court to replay the requested testimony.

The playback involved no rights to confront witnesses or cross-examine witnesses and was not a situation in which polling of the jury would be appropriate. The reason the jury would be appropriate. In the presence of the jury, counsel for Hannagan attempted to waive Mr. Hannagan's rights to be present, and the district attorney concurred in this result. The trial court indicated its willingness initially to wait until morning when Mr. Hannagan would be present. Under these circumstances, we believe that it was made sufficiently clear to the jury that Mr. Hannagan had not absconded from the jurisdiction or defied an order of the court, to be present so as to create an unfavorable impression to the jury. There is no allegation here that there was communication between the court and the jury without counsel for both sides present. This case does not involve reinstruction of the jury on matters of law. We do not think that the psychological effects of defendant's absence during a 45-minute replay merits retrial in this case.

Hannagan's absence from the courtroom during a stage of trial was error. While we urge trial courts to comply with the constitutional mandate in the future, we find that defendant's absence in this case was harmless beyond a reasonable doubt. Accordingly, the conviction is reinstated, and the decision of the court granting the post-conviction relief pursuant to Criminal Rule 35(b) is reversed.

REVERSED.

have had an impact on the decisional process. In *Lee v. State*, 509 P.2d 1088 (Alaska 1973), it was prejudicial error for the defendant to be absent when the jury returned the verdict. Had he been present, he could have insisted on a jury poll where each juror would have been exposed to the psychological impact of announcing his decision directly to the defendant. In *Noffke v. State*, 422 P.2d 102 (Alaska 1967), a judge's communication answering the jury's request for additional instructions concerning a vital issue in the case in the absence of the defendant or counsel was held to be prejudicial to the defendant since he could have objected to the new instructions had he been present and aware that they were being sent to the jury. In *Brown v. State*, 372 P.2d 785 (Alaska 1962), the defendant's absence at a hearing to determine whether his wife would waive her spousal privilege and testify as a defense witness was prejudicial. The court held that Brown might have been able to convince his wife to waive the privilege if he had been present, or he could have suggested a line of questioning to his attorney, or perhaps he could even have conducted the questioning himself. In *Speidel v. State*, 460 P.2d 77 (Alaska 1969), the defendant's absence at the pre-sentence conference was presumed to be prejudicial since the defendant could have discussed or challenged the pre-sentence report and supplied the judge with additional information, thereby directly affecting the sentence. In *Koehler v. State*, 519 P.2d 442 (Alaska 1974), the discharge of a hung jury in the absence of the defendant was prejudicial error since the defendant's presence could have had a significant impact on the court's exercise of discretion in deciding whether or not to discharge the jury. The defendant could have requested a poll of the jury, additional inquiries or instructions. In *R.L.R. v. State*, 487 P.2d 27 (Alaska 1971), a violation of Children's Rule 12(c) was presumed to be prejudicial. The accused juvenile was not present at the full-scale factual hearing involving the testimony and cross-examination of the state's principal witness against him.

21. The court stated:

All right. If I understand it correctly then, we just want to listen to the testimony, so there won't be any questions addressed to the court or counsel by—all you want to do is listen to the testimony.