**Robert E.C. PECKHAM, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. 7029.

Court of Appeals of Alaska.

Aug. 22, 1986.

Tina Kobayashi, Asst. Public Defender, Juneau, and Dana Fabe, Public Defender, Anchorage, for appellant.

James V. Gould, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

SINGLETON, Judge.

Robert Peckham was convicted by a jury of murder in the first degree. AS 11.41.-100. He appeals, contending that the trial court committed plain error by interrogating two jurors out of Peckham's presence regarding possible juror bias, and in failing to include all of the members of the jury in the interrogation. We find no plain error and affirm.

Peckham's trial began on Thursday, March 25, 1982, and ended when the jury returned a guilty verdict on April 4, 1982. On Friday, March 26, 1982, at approximately 12:30 p.m., during the presentation of the state's case-in-chief, the trial court met with counsel and the defendant out of the presence of the jury to discuss some preliminary matters. Judith Eckholm, one of the sitting jurors, had approached Judge Pegues and informed him of certain statements by one of the alternate jurors, Edna Woodman, which, in juror Eckholm's view, might have violated a court order not to discuss the case. Judge Pegues called counsel for Peckham and the state to the bench and disclosed this fact to them, and indicated that he intended to permit them to *voir dire* jurors Woodman and Eckholm to determine whether anything inappropriate occurred. Peckham was not invited to the conference at the bench.

The prosecutor and defense counsel agreed with Judge Pegues that the two jurors should be interviewed, but expressed reluctance to be present for the interview, fearing that the jurors might feel threatened by the interview and become angry at one side or the other as a result. The prosecutor mentioned to Judge Pegues that

in another case the trial court had agreed to examine the jurors *in camera* without the presence of either party, and in that way had satisfactorily resolved a similar problem. Defense counsel made it clear that he did not wish Peckham or himself to be present at such an interview.

The trial court reluctantly acquiesced in counsel's suggested solution for the problem, and agreed to interview the two jurors, on the record but out of the presence of the parties, the following Monday. Defense counsel then returned to his seat and briefly explained to Peckham what had happened. Defense counsel did not tell Peckham that he had a right to be present when the jurors were interviewed, nor did he specifically solicit a waiver of Peckham's presence at the interview. The trial court did not address Peckham personally to obtain an express waiver of Peckham's presence at the *voir dire* of the jurors.

The following Monday the trial court conducted *voir dire* of jurors Eckholm and Woodman as planned. Eckholm testified that Woodman mentioned to the jurors that she had read newspaper accounts of the jury selection proceeding. Apparently a second alternate juror, Ms. Schuler, had also read the newspaper account, and Woodman and Schuler disputed some of the assertions of fact. Another juror immediately told Woodman and Schuler that they were not supposed to be talking about anything connected with the case and they stopped. Thereafter, some jurors wondered out loud about how sequestration of the jury worked and whether the jurors would have to pack a suitcase. At this point, Ms. Woodman apparently said that she had been on a jury before and did not feel that deliberations in this case would need to last very long. These comments made Eckholm and another juror, Susie Fowler, uncomfortable. In Eckholm's view, Woodman was also very opinionated about drugs. However, Judge Pegues had given a detailed instruction to the jury regarding discussion of the case after being contacted by Eckholm the preceding Friday. Eckholm confirmed that no further discussions had taken place after that instruction.

When questioned, Woodman denied knowing anything about the case, having expressed any opinion about drugs and drug usage, or the defendant's guilt or innocence. Judge Pegues did not interview any of the other jurors. Peckham challenged Woodman for cause, but the challenge was denied. The trial was completed without any personal objection by Peckham to the *voir dire* procedure followed by Judge Pegues. Nor did Peckham or his counsel ever request that the trial court talk to other jurors. When the case was completed, the jury went into deliberations. Woodman and the other alternate juror with whom she had spoken, Judy Schuler, were excused and did not participate in deliberations.

Peckham concedes that his counsel requested the procedure followed by Judge Pegues. He also concedes that his counsel's request was in part tactical, intended to prevent juror hostility to Peckham. Peckham nevertheless contends that the procedure was fatally flawed, requiring reversal of his conviction. He relies upon *State v. Hannagan*, 559 P.2d 1059 (Alaska 1977) and *Lee v. State*, 509 P.2d 1088 (Alaska 1973).

In *Lee*, the defendant successfully obtained a retrial when it was established that the jury verdict was taken in his absence. The supreme court reached this conclusion despite the presence of defense counsel who purported to waive defendant's rights. The court relied on Alaska Rule of Criminal Procedure 38 (based on Federal Rule of Criminal Procedure 43) which requires presence of the defendant at various stages of the trial. 509 P.2d at 1092–93.

In *Hannagan*, the court found that a defendant has a right to be present if a deliberating jury requests playback of testimony. 559 P.2d at 1064. Again, defense counsel purported to waive the defendant's right to be present for tactical or strategic reasons, but the supreme court found the waiver ineffective.

[T]he waiver [of the defendant's right to be present] is effective only if either: (1) the defendant has given counsel express authority in a knowing and intelligent manner, (2) the defendant is present at the time of the waiver, has clearly been informed of his rights, and remains silent, or (3) the defendant subsequently acquiesces in the proceedings in a knowing and intelligent manner.

559 P.2d at 1064 (quoting *Lee v. State*, 509 P.2d at 1092). The court concluded:

In light of the constitutional mandate of defendant's personal waiver, we hold that the waiver of defendant's presence during the playback of testimony was ineffective. Since the defendant did not effectively waive his presence, we hold that it was constitutional error for the judge to communicate with the jury or permit the playback of testimony to the jury in defendant's absence.

559 P.2d at 1065. The trial court's error, however, was found to be harmless beyond a reasonable doubt. *Id.* at 1066.

Peckham recognizes that a waiver may be express or implied, but contends that there is no basis for inferring a waiver in his case. While his counsel did alert him to the trial court's intent to privately *voir dire* the jurors (and, apparently, defense counsel's reasons for not wishing to be present) defense counsel did not specifically ask Peckham if he wished to be present or explain to him his right to be present. Thus, Peckham concludes, if he acquiesced in the trial court's decision, it was not with knowledge of his rights. *Lee*, 509 P.2d at 1092-93. We reject this argument.

*Lee* and *Hannagan* are distinguishable from the present case. In the previous cases, the trial court elected to communicate with a sitting jury at a time when the defendant was absent. Additionally, the defendants in both cases did not learn personally of the trial court's intentions until after the communication took place. In contrast, the decision to *voir dire* jury members *in camera* in this case was made at a time when Peckham was present in court, albeit not at the bench. It appears that defense counsel immediately informed Peckham of what was intended, although the actual *voir dire* of the jury did not occur until the following Monday. Peckham voiced no objection at the time. Peckham was competent to assist in his own defense, and was informed of the surrounding circumstances; consequently, his failure to personally object to the procedure may have constituted a waiver. *See United States v. Gagnon*, 470 U.S. 522, ——, 105 S.Ct. 1482, 1485-86, 84 L.Ed.2d 486, 491-92 (1985). *See also Rushen v. Spain*, 464 U.S. 114, 125-26, 104 S.Ct. 453, 459, 78 L.Ed.2d 267, 277-78 (1983) (Stevens, J., concurring).

■ It is unnecessary for us to decide the waiver issue, however, because we are satisfied that any error was harmless beyond reasonable doubt. *Hannagan*, 559 P.2d at 1065-66. It does not appear that Peckham's presence would have added anything to the *voir dire* of the jurors, or in any way have protected him against any prejudice. Neither Woodman nor Schuler, the juror with whom Woodman conversed, ultimately participated in deliberations. In contrast, juror Eckholm, who did participate, was sufficiently shocked by Woodman's conduct to bring it to the court's attention. Peckham has not demonstrated how his presence at the *voir dire* examination might have led to a more favorable result.

In *Lee*, the court felt that a poll of the jury might have prevented acceptance of an adverse verdict. Here, Peckham indicates that he might have sought a mistrial or specific instruction to the jury had he been present. Judge Pegues refused to dismiss the alternate juror when requested to do so by Peckham. Therefore, it is difficult to imagine that he would have granted a mistrial, even if it has been requested. Peckham did not seek further action from his attorney. It is unlikely that presence at the *voir dire* would have led him to request further action from the court. Under the circumstances, any error was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 23-

 

24, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705, 710–11 (1967).

*Jones v. State,* 719 P.2d 265 (Alaska App. 1986), which found constitutional error where the trial court responded to a jury inquiry without notifying defendant or his counsel and allowing them to comment, is also distinguishable. Here, counsel was informed of, and approved, the court's anticipated action, and that action did not involve a deliberating jury.

██ Peckham next argues that the trial court committed plain error in failing to interview all of the members of the jury regarding possible influence by Woodman. We find no plain error. Such a finding would require us to conclude that no rational judge could have limited his inquiry to the jurors actually interviewed. We are satisfied that a rational judge could have taken the approach used by Judge Pegues. Juror Eckholm's comments indicated that all the other jurors were anxious to comply with the trial court's order that they not talk about the case while evidence was being presented. It appeared that only juror Woodman violated that order, and she desisted when the trial judge elaborated on the order after his initial meeting with counsel on that Friday.

Under the circumstances, a rational judge could well conclude that interrogating other jurors might have caused more problems than it would uncover. It is important to stress that bias is not a "communicable disease"; there is no indication that Woodman disclosed any information likely to prejudice the other jurors. At most, she expressed an attitude adverse to Peckham. Since neither Woodman nor Schuler ultimately deliberated, it is virtually certain that further interrogation of the jurors would not have changed the ultimate result.[1]

The judgment of the superior court is AFFIRMED.

---

1. This case has been pending since 1982. Peckham originally challenged his conviction and sentence on a number of grounds. Thereafter, the parties stipulated to a partial remand to consider the issues addressed in this opinion, as well as aspects of the sentencing. Upon the completion of proceedings in the trial court, Peckham filed a brief arguing only the issues which we have decided. We assume all other issues regarding his conviction and sentence have been abandoned. *Lipscomb v. State,* 700 P.2d 1298, 1304 n. 5 (Alaska App.1985).