**STATE of Alaska, Petitioner,**

v.

**Paul SHEWFELT, Respondent.**

**No. S–7609.**

Supreme Court of Alaska.

Nov. 21, 1997.

W.H. Hawley, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Petitioner.

J. John Franich, Assistant Public Advocate, Fairbanks, and Brant McGee, Public Advocate, Anchorage, for Respondent.

Before MATTHEWS, C.J., and COMPTON, EASTAUGH and FABE, JJ.

*OPINION*

FABE, Justice.

I. *INTRODUCTION*

Paul Shewfelt, a criminal defendant, was not notified before the jury in his trial listened to a playback of certain recorded testimony. The superior court granted Shewfelt's motion for a new trial, and the court of appeals declined review. We granted the State's petition for review and now reverse the superior court's decision.

II. *FACTS AND PROCEEDINGS*

In November 1991 a Fort Yukon jury convicted Shewfelt of first degree sexual assault. While the jury was deliberating, it requested to rehear the entire testimony of the victim and Shewfelt. Superior Court Judge Jay Hodges permitted the in-court clerk to play

for the jury those portions of the trial court's tapes of the proceedings.

Following his conviction, Shewfelt filed an application for post-conviction relief alleging ineffective assistance of counsel. During the hearing relating to that motion, Shewfelt testified that he did not know until after the trial that the jury had listened to a playback of trial testimony while it was deliberating. After reviewing tapes of the 1991 trial proceedings, Judge Hodges concluded that he had not advised Shewfelt on the record about the jury's request.

Based upon Judge Hodges's conclusion, Shewfelt filed a motion for a new trial, and Judge Hodges conducted a hearing on December 2, 1993. At that hearing, the parties stipulated that

> if the in[-]court clerk were called to testify concerning the replay of the testimony of Mr. Shewfelt, and the victim in the case, she would testify that she recalls playing the testimony for jurors in Fort Yukon in the courtroom, and played the testimony of each witness all the way through once, and if there were requests to hear certain portions over again, she would have done that.

Judge Hodges found "no evidence to show that Mr. Shewfelt was notified of the request for the replay, or that he knew of the replay until after the verdict had been returned." Although he concluded that the failure to notify Shewfelt was error, he determined that because the in-court clerk followed "the normal practice" in replaying testimony, the error was harmless beyond a reasonable doubt. Therefore, Judge Hodges denied Shewfelt's motion for a new trial.

The court of appeals reversed and remanded Judge Hodges's decision. After noting that "Judge Hodges based his ruling on the parties' stipulation as to what the in-court clerk's testimony would be," it concluded that "there was an insufficient record for Judge Hodges's conclusion that Shewfelt was not prejudiced."

On remand, Judge Hodges conducted an evidentiary hearing. At the end of this hearing, he determined that Shewfelt's attorney and the prosecutor had been informed of the replay request. He also found that there was nothing "improper with the replay of the

testimony" and that "there were no improper communications with the jurors from the court, the in-court clerk or any other person during the replay of the testimony" based upon the stipulated testimony of the in-court clerk. Nevertheless, Judge Hodges concluded that the State had not satisfied its burden of proving any error was harmless beyond a reasonable doubt because "the mere presence of Mr. Shewfelt present during the replay of testimony ... certainly may have had an effect on the outcome." Therefore, the trial court granted Shewfelt's motion for a new trial.

A divided court of appeals declined to review Judge Hodges's decision, and we granted the State's petition for review.

## III. DISCUSSION

### A. Standard of Review.

We have never expressly stated the standard for reviewing a trial court's decision that an error was harmless beyond a reasonable doubt. However, in cases involving juries' playback requests, we have reviewed such decisions without deference to the trial court. *See, e.g., State v. Hannagan*, 559 P.2d 1059, 1065–66 (Alaska 1977). Based upon *Hannagan*, we will independently review the record to determine whether the State has satisfied its burden of proving that the alleged error was harmless beyond a reasonable doubt. *Id.*

In examining this issue, we must determine whether the superior court erred in reaching certain factual findings based upon the stipulated testimony of the in-court clerk. We review a trial court's factual findings under the clearly erroneous standard. *See Vokacek v. Vokacek*, 933 P.2d 544, 547 (Alaska 1997). We will find clear error only "when we are left with a definite and firm conviction on the entire record that a mistake has been made." *Martens v. Metzgar*, 591 P.2d 541, 544 (Alaska 1979).

### B. Judge Hodges's Failure to Notify Shewfelt of the Playback Request and Shewfelt's Subsequent Absence from the Playback Were Harmless beyond a Reasonable Doubt.

The primary issue in this case is whether any error relating to Shewfelt's ab-

sence from the playback was harmless beyond a reasonable doubt. We agree with the State that our decision in *State v. Hannagan,* 559 P.2d 1059 (Alaska 1977) controls.

Hannagan demanded a new trial because he had not been notified of the jury's request for a playback of certain testimony.[1] *Hannagan,* 559 P.2d at 1066. He did not claim that any improper conduct occurred during the playback proceedings or that it was error for the trial court to have replayed the requested testimony. *Id.* Therefore, the court examined only whether Hannagan's absence alone reasonably might have had a prejudicial psychological effect on the jury. *Id.*

In arguing that *Hannagan* controls, the State asserts that no improper conduct occurred during the playback proceedings. Because no record of these proceedings exists, the State apparently bases its assertion on Shewfelt's stipulation that the in-court clerk followed "the normal procedure."

The relevant portion of the December 2, 1993 hearing transcript provides:

THE COURT: I spoke to the in[-]court clerk, and she confirmed that, in fact, testimony was played. So, do counsel want to call her, to test—have her testify about that, we can have her testify. Otherwise, she confirmed with me that she recalls playing the testimony, and she recalled—her recollection is that she would have played the testimony all the way through once, and—and then, if they wanted additional portions, would have done that. So, that's what she—I mean, I had a brief conversation with her awhile ago.

MR. O'BRYANT: The State's willing to stipulate to that as fact, Your Honor.

MR. HACKETT: So is the defense, Your Honor.

THE COURT: All right. It's stipulated, then, that if the in[-]court clerk were called to testify concerning the replay of the testimony of Mr. Shewfelt, and the victim in the case, she would testify that she recalls playing the testimony for the jurors in Fort Yukon in the courtroom, and played

the testimony of each witness all the way through once, and if there were requests to hear certain portions over again, she would have done that. And I—I didn't specifically ask her about that portion of it, so I—she may or may not have done.

MR. HACKETT: Well, our understanding is that it—according to Mister . . . .

THE COURT: According—according to the affidavits that have been filed, or the—whatever, that was done. I did not specifically discuss that with the in[-]court clerk. But, that wa—the normal procedure would have been followed—or, the procedure that's generally followed in Fairbanks would have been followed in connection with a replay of the testimony. The parties will stipulate to that.

MR. HACKETT: Yes.

At the conclusion of the hearing on remand, the superior court relied on this stipulation in finding that there were no improper communications during the playback proceedings:

With respect to the replay of testimony, based on the stipulation of the in—of the testimony of the in-court clerk—was called to testify, it was done at the previous hearing, the nor—the, quote, normal practice was followed in this case.

. . . .

The court does not find and specifically finds there were no improper communications with the jurors from the court, the in-court clerk or any other person during the replay of the testimony. Even though there was no record to that effect, the stipulation of the testimony of the in-court clerk reflects and lea[d]s the court to conclude this fact.

Upon reviewing the record, we are not left with a "definite and firm conviction" that the superior court erred when, based on the stipulated testimony that the in-court clerk followed the "normal practice," it concluded that no improper communications occurred during the playback proceedings.

■ Having concluded that the superior court did not clearly err when it made this

1. His attorney, who was present during the playback, attempted to waive Hannagan's right to be present. We concluded that the waiver was not valid because Hannagan had not expressly authorized his attorney to waive his right to attend the playback. *Hannagan,* 559 P.2d at 1065.

finding, we turn, as we did in *Hannagan*, 559 P.2d at 1066, to whether Shewfelt's absence alone may have had a prejudicial psychological effect on the jury. At the hearing on remand, the superior court apparently analyzed this issue by focusing on whether Shewfelt's presence might have had an effect that would have benefitted him.

We conclude that this analytical framework is inconsistent with our decision in *Hannagan*. In that case, we concluded that there was no prejudicial psychological effect because statements by the parties' attorneys and the judge in the jury's presence made it "sufficiently clear ... that Mr. Hannagan had not absconded from the jurisdiction or defied an order of the court, to be present so as to create an unfavorable impression to the jury." *Hannagan*, 559 P.2d at 1066. Thus, we examined whether Hannagan's absence created an unfavorable impression, not whether Hannagan's presence might have produced a favorable effect.[2]

With this understanding of *Hannagan*, we conclude that the facts of this case pose even less risk of negative psychological effects than the facts of *Hannagan*. In *Hannagan* the judge and both counsel were present when the in-court clerk replayed the requested testimony for the jury. 559 P.2d at 1061, 1066. In this case, only the in-court clerk and the jurors attended the playback. Nothing suggested that it was unusual for Shewfelt to be absent. We therefore conclude that the trial court's failure to notify Shewfelt of the playback request and Shewfelt's subsequent absence from the playback were harmless beyond a reasonable doubt.

## IV. *CONCLUSION*

We conclude that the superior court did not clearly err in finding that all communications during the playback proceedings were proper. We also determine that error resulting from the failure to notify Shewfelt personally of the jury's playback request was harmless beyond a reasonable doubt. Therefore, we REVERSE the superior court's decision granting Shewfelt a new trial and REMAND this case with directions to reinstate Shewfelt's conviction.

BRYNER, J., not participating.

---

2. Moreover, focusing on whether a defendant's presence at a playback might have benefitted the defendant would make it very difficult, if not impossible, for the State to prove harmless error. A defendant's presence arguably could have an advantageous psychological effect in any case, not just in those such as Shewfelt's where the defendant likely knows the jurors. Thus, even if the State carefully conducted all playback proceedings on the record, a party might still successfully obtain a new trial by simply alleging that such beneficial effects would have occurred had the party been present during the playback. Because jurors' psychological states cannot be recorded, focusing on potential benefits to the defendant might be tantamount to creating a rule that a defendant's absence from a playback is a *per se* reversible error. We consistently have declined to adopt such a rule. *See Dixon v. State*, 605 P.2d 882, 884 (Alaska 1980); *Cox v. State*, 575 P.2d 297, 300 (Alaska 1978).